Joseph W. Low *versus* Bonapart Marco and Lauretta Marco, *his wife.*

(1.) By R. S., c. 61, § 1, when payment was made for property conveyed to a married woman from the property of her husband, or it was conveyed by him to her without a valuable consideration paid therefor, it may be *taken* as the property of her husband to pay his debts contracted before such purchase.

(2.) This section does not prescribe the *manner* in which "property, conveyed to a married woman from the property of her husband *may be taken* as the property of her husband.

(3.) It may be taken by levy or by process in equity, or by both.

(4.) By *levy*, when the title *has once been in the husband*, and he has conveyed it, directly or indirectly, to his wife without a valuable consideration, in fraud of his creditors.

(5.) By process in equity, without a levy, when the husband has never had any legal title, but it has been conveyed to the wife with a resulting trust for his benefit.

(6.) Or by levy *and* process in equity.

But where the husband never had any legal title, the creditor cannot acquire a legal title by a simple levy.

The maxim, — "*potior est conditio defendentis*," applies only where the plaintiff fails to establish any *legal* title.

On Exceptions from *Nisi Prius*, Appleton, C. J., presiding.

Writ of Entry.

The action was referred to John Appleton, by rule of Court, with right to except.

The referee made the following special report : —

" I find that the title to the demanded premises was in Charles D. Gilmore and Calvin H. Whitney, who, on May 14, 1851, conveyed the same by deed to Abigail Hussey, wife of Franklin Hussey ; that, on Dec. 8, 1863, said Abigail Hussey conveyed the same by deed of quitclaim to the demandant, both deeds being duly recorded.

" I find, therefore, the legal title to the demanded premises to be in the demandant.

" The tenant offered evidence, showing or tending to show,

that Franklin Hussey at the time of the conveyance to Abigail Hussey was insolvent; that the consideration for said conveyance moved from the husband, and that the conveyance was made to her to keep the same from the reach of the creditors of her husband; and that the facts were known to the demandant when he acquired the title of Abigail Hussey.

"It further appeared that Frederick A. Butman recovered judgment, at the Jan. term, D. C., 1851, against Franklin Hussey & als., for $57,69 debt, and $23,78 costs of suit, on a poor debtor's bond dated July 27, 1848, and signed by Hussey as surety. That, on March 23, 1853, levy was made on the premises in controversy as the estate of Franklin Hussey, on execution, *Butman* v. *Hussey & als.* That, on July 30, 1860, said Butman, by deed of quitclaim, conveyed to Calvin H. Whitney the title acquired by the levy, who, on May 4, 1863, conveyed the same to Lauretta, wife of Bonapart Marco, who entered with her husband into possession under said deed, and have since occupied the premises, all said deeds and levy being duly recorded.

"But, as I find the legal title in the demandant, I regard the facts proved, or offered to be proved, as constituting no legal defence. I therefore award, and this is my final award in the premises, that the demandant recover seizin and possession of the premises set forth in the writ, and costs of reference," &c.

To the acceptance of the report, the defendants objected; contending, as matter of law, that the facts set forth in the report constituted a defence to the action.

The presiding Judge overruled the objection and ordered the report to be accepted; to which the defendants excepted.

*A. L. Simpson*, for the defendants.

*C. P. Stetson*, for the plaintiff.

KENT, J. — The referee finds that the legal title to the premises demanded is in the demandant. This fact is clear

upon the case as stated in the report. He is, therefore, entitled to judgment, unless the defendant shows a better title, or some legal reason why the legal title should not prevail.

The evidence offered by the defendant, it is to be assumed in this hearing, establishes these facts, — that the conveyance to Abigail Hussey was made on the consideration of payment by her husband, who was insolvent at the time, and for the purpose of keeping the property out of the reach of the creditors of the husband, and that these facts were known by the demandant when he acquired the title from the wife.

These facts bring the case within the provisions of the R. S., c. 61, § 1, which declares that, in such a case, the land "may be *taken* as the property of the husband to pay his debts, contracted before such purchase." The case further shows that a creditor of the husband did, subsequently, levy on the land, so conveyed to the wife, as the property of the husband, and that these defendants are in holding and claiming under that levy, by regular conveyances.

The question, in this case, is, — can the defendants resist the legal title, or must they resort to a court of equity to enforce their equitable rights?

It is a well established principle that an equitable estate will not sustain a writ of entry. *Crane* v. *Crane*, 4 Gray, 323 ; *Chapin* v. *U. Society*, 8 Gray, 580.

But the defendants contend that, being in possession, they cannot be dispossessed, even by the holder of the legal title, in a suit at law, if the conveyance was in fraud of creditors or the property is held under a resulting trust in favor of the husband. The argument is, that although they might not be able to maintain a writ of entry, they may defend against one. But the question, as presented, is confined entirely to the legal rights of the parties, and the plaintiff shows a legal right. It is true that, in some cases, "*potior est conditio defendentis*," but that is where the plaintiff fails to establish any legal right. However defective the title or claim of the defendant, he cannot be ousted from his actual possession,

unless the demandant shows a legal title to the premises. But when he does show such title, the defendant cannot resist it, unless he, on his part, shows a legal right to retain it.   It then becomes a question of the superiority of the titles at law, and we can see no such superiority in the defendant's title, simply because he is in possession, and is resisting the plaintiff's claim.   His advantage is, that he may rest without offering any proof of his title or claim, until the plaintiff has, at least, made out a *prima facie* title.   But when he is put upon his defence, by such proof, he must overcome his adversary by establishing, on his part, a better title or right.   *Howe* v. *Bishop*, 3 Met., 28.

The defendants cite and rely upon the case of *Goodwin* v. *Hubbard*, 15 Mass., 210.   This case has been much questioned.   (See notes on that case in Rand's edition of Massachusetts Reports.)   It is not confirmed, but manifestly questioned in *Howe* v. *Bishop*, above cited.   It was decided before the equity powers of the Court had been enlarged, and was manifestly one of those cases, where the Court attempts to do what appears to be right and justice, by expanding the strict rules of common law in relation to real actions beyond their true limits.   It has never been confirmed, but often doubted and denied.   It is opposed to the whole current of authorities, and we have no doubt that, when the question distinctly arises, it will be overruled.

The extent of an execution upon the real estate of a wife, by a creditor of the husband, where the husband never had any legal title to the premises, although the legal title is held as a resulting trust for his benefit, does not vest the legal estate in the creditor.   *Dockray* v. *Mason*, 48 Maine, 178 ; *Howe* v. *Bishop*, 3 Met., 28.

The defendants further say, that, however this may be at common law, by the express provision of the statute, before recited, the creditor may acquire a legal title, in a case like this, by a levy alone.   The argument is, that this being a case where the payment was made by the husband, for the property conveyed to the wife, and the statute pro-

viding that in such a case the land may be "*taken*," as the property of the husband to pay his prior debts, it may be taken directly by a levy of an execution on the legal estate, which is thereby, without further proceedings, transferred to the creditor.

This would be so, *where the title had once been in the husband*, and he had conveyed it, directly or indirectly, to his wife, without a valuable consideration, in fraud of his creditors. In such a case, and in similar cases, the title has never legally passed from the debtor who held it, as against creditors, and therefore it may be levied upon, as still in the debtor. *Howe* v. *Bishop*, before cited.

But where the debtor never had any legal title, no legal title can be acquired simply by a levy. The creditor, however, is not without remedy. After such levy, a court of equity will aid the creditor to obtain the title, or the property, upon application. It will do this, after all legal measures have been taken to obtain the legal title by levy. *Webster* v. *Clark*, 25 Maine, 313 ; *Dockray* v. *Mason*, 48 Maine, 178, and several other cases. It has been held, also, that, where the legal title never was in the debtor, the judgment creditor may reach and secure the property in equity, without *any levy* on the premises. *Corey* v. *Green*, 51 Maine, 114.

The language of the statute is, that the land "may be taken as the property of her husband to pay his debts." How taken? The statute is silent as to the mode. If there were no other mode than by a levy, it might be argued, with great force, that the statute intended to give a certain and effectual remedy, and that this being the only one provided by law, however inconsistent with established principles in reference to the transfer of legal titles, it must be made to answer the end contemplated, or the object of the statute would be entirely defeated. But there is a remedy in equity, ample and practical. It was existing when the statute was passed, and the Legislature must have had it in view in its action. The statute, as it will be observed, does not declare that it may be taken *by levy on execution*, as his pro-

perty. It simply declares, as a principle of law, that it may be taken to pay his debts by his creditor, leaving the mode and manner of taking to be determined by the existing law and practice. It gave the right, but did not prescribe any particular remedy or process by which the right could be enforced.

This is the view taken of this statute by this Court, in the recent case of *Dockray* v. *Mason*, 48 Maine, 178, and we think it is correct.

If the defendants have equitable rights, they can be enforced by a bill in equity.          *Exceptions overruled.*

APPLETON, C. J., CUTTING, DAVIS and WALTON, JJ., concurred.